ORDERED in the Southern District of Florida on May 25, 2007



John K. Olson, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

ROBERT HARLOW OFFER,   Case No. 05-28253-BKC-JKO
                      Chapter 7
    Debtor.
_____/

PINNACLE YACHT SALES, INC.,

    Plaintiff,

v.                    Adv. Pro. 06-1480-JKO

ROBERT HARLOW OFFER,

    Defendant.
_____/

**FINDINGS OF FACT, CONCLUSIONS OF LAW
AND MEMORANDUM OPINION**

This adversary proceeding was brought against Robert Harlow Offer (the "Debtor") by Pinnacle Yacht Sales, Inc. ("Pinnacle") seeking a determination that the Debtor should be denied his discharge on three grounds: false oaths on his bankruptcy schedules; failure to explain the loss of assets; and failure to keep appropriate books and records. This case is the final stage in litigation between the parties which has been

pending since April 2004. Although it is clear that the Debtor is an incompetent businessman, Pinnacle has failed to carry its burden as to any of the three statutory bases for the denial of the Debtor's discharge. Accordingly, the Debtor's discharge will not be denied.

### Findings of fact

The Debtor was the only witness at trial. I found his testimony to be credible. Although Pinnacle contends that the Debtor is a "sophisticated businessman," I conclude on the basis of the evidence presented that although the Debtor sold enormous yachts to presumably sophisticated (and certainly rich) clients during his career, his business acumen is about as sophisticated as a dinghy.

The Debtor began his career as a yacht salesman and broker in Fort Lauderdale in 1975, when he was approximately 25 years old. He worked as a salesman and sales manager for two production yacht sales companies until 1988, when he formed Wood Offer & Associates, specializing in the sale of large yachts worldwide. He left Wood Offer in 1991 and formed Offer & Associates International, Inc. ("Offer & Associates"), which operated from then until 2003 in essentially the same business. Offer & Associates never issued any stock and was dissolved by the Florida Secretary of State in 2004.

Offer & Associates' gross income fell consistently between 1999 and 2001, from $392,000 in 1999, to $256,000 in 2000, to $82,000 in 2001. Offer & Associates and the Debtor individually entered into a brokerage/sales agreement with Pinnacle in 2001 which was terminated by Pinnacle in May 2003 for "lack of performance." The Debtor thereafter began to sell yachts independently and to work as a yacht consultant, all without notable success. In September 2003, he incorporated Offer Yacht Sales, Inc.

("Offer Yacht") as an S corporation. Its only assets were minor office equipment, sales brochures, books, and (generally empty or nearly so) bank accounts.

Pinnacle sued the Debtor and Offer & Associates in April 2004 on a promissory note and sought reimbursement of expenses and return of allegedly unearned commissions. Pinnacle was represented in that litigation by the same law firm which represents it here.

The Debtor filed his voluntary chapter 7 petition in October 2005.

The Debtor's Schedules and Statement of Financial Affairs were sloppily prepared. How much of that sloppiness is attributable to the Debtor, and how much to his original bankruptcy counsel, Demetrious Kirkiles, is unclear.[1] For example, the Debtor's Schedule B as originally filed omitted his Chrysler Pacifica as an asset, although it had been disclosed on the Debtor's original Schedule D and the Debtor's monthly statement for his car loan had been in Mr. Kirkiles' files.

The Debtor also failed to schedule his ownership interest in Offer Yachts, the counterclaims he had asserted in the Pinnacle litigation, and what Pinnacle described as his "phone diary." This last asset is the Debtor's personal phone book containing the names, addresses and telephone numbers of friends, family, doctors, former customers, toll-free numbers, charities, religious leaders, dentists, lawyers, hotels, restaurants, auto shops, and, as characterized by the Debtor's counsel, "pretty much everyone he knew or has known over the years" – some of whom are now deceased, some of the numbers and

---

[1] Mr. Kirkiles sought to withdraw as counsel for the Debtor by motion [CP 49] filed in the Debtor's main case on November 22, 2006, citing "irreconcilable differences" of a non-monetary nature. Although I conducted a hearing on the motion on December 18, 2006, and orally granted the motion, it appears that no order was ever submitted by Mr. Kirkiles, and none has been entered.

3

addresses have changed, and the Debtor has never updated it. The "phone diary" is of no value.

Similarly, Offer Yachts was of no real value. All of the Debtor's records for Offer Yachts were provided to Pinnacle's counsel and to the chapter 7 Trustee, Soneet Kapila (the "Trustee"). Although the company had been administratively dissolved prepetition, the Statement of Financial Affairs at Question 18 states that Offer Yachts was currently operating. Since the documents relating to the company were provided to his former bankruptcy counsel, the Trustee and Pinnacle and the company was listed on the Statement of Financial Affairs, I conclude that the Debtor's failure to list Offer Yachts in his original Schedule B was an inadvertent oversight.

The Debtor's bank account balances were misstated.[2] Since the existence of the bank accounts was disclosed and the information regarding the balances was made available to the Trustee and Pinnacle, I conclude that this was similarly a result of inadvertence.

The Debtor did not list his counterclaims against Pinnacle as an asset in his original Schedules, although they were listed on amended Schedules. I find the Debtor's explanation that he had forgotten about the counterclaims to be plausible in light of my overall impression of the Debtor as unsophisticated. There is a certain irony in Pinnacle's argument that the Debtor's failure to list his counterclaims against it – which have not been pursued by the Trustee and whose merit is thus dubious – should give rise to a denial of the Debtor's discharge. Irony, but not persuasion, for I am satisfied on the

---

[2]This is a fairly common phenomenon and frequently results from a Debtor's listing of his or her balance after deducting checks which have not cleared, rather than the balance on the bank's books as of the petition date.

4

basis of the Debtor's testimony that he had completely forgotten about the existence of the counterclaims.

Pinnacle's contention that the Debtor understated values for his household goods is not supported by any evidence. Pinnacle offered no appraisal evidence and the Debtor's testimony that the values stated were what he believed the personal property to be worth was unrebutted.

Pinnacle contends that the Debtor failed to list his debts in proper fashion on Schedule F. The Debtor's explanation – that he followed the advice of Mr. Kirkiles in identifying his creditors, using both his credit reports and his (admittedly scanty) records – was unrebutted. Moreover, although the Trustee formally withdrew [CP 47 in the Debtor's main case] his report of no distribution in November 2006, prior to the taking of the Debtor's Rule 2004 examination, he has not thereafter filed any pleading which suggests that there are assets which could be distributed.

Pinnacle challenges the accuracy of the Debtor's Schedules I (income) and J (expenses). Both of these Schedules ask for estimates, and the unrebutted testimony is that the Debtor put his best guess of annualized income and expense expressed in monthly terms. He clearly overestimated his income. There is no evidence before me that he did so with any improper intent or that any party in interest was mislead as a result.

The Debtor did not list his $1,000 payment to Mr. Kirkiles on his Statement of Financial Affairs, which was prepared by Mr. Kirkiles. That payment was disclosed on Mr. Kirkiles' Rule 2016(b) disclosure, which was attached to the original filed Schedules. The Debtor had no explanation as to why Mr. Kirkiles failed to fill out the

SOFA correctly. The relevant information was timely, albeit incompletely, disclosed, and no prejudice to any party in interest has been shown.

Based upon the evidence presented, I find that the Debtor's Schedules and Statement of Financial Affairs were sloppy, but that the sloppiness did not prejudice any party in interest. All records which exist have been made available to Pinnacle and to the Trustee. The Debtor answered all questions asked of him at the meeting of creditors held pursuant to 11 U.S.C. § 341 and at the Rule 2004 examinations conducted by the Trustee and by Pinnacle. No assets or documents were hidden.

## CONCLUSIONS OF LAW

I have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(J).

The primary purpose of bankruptcy law is to provide an honest debtor with a fresh start by relieving the burden of indebtedness. *Perez vs. Campbell*, 402 U.S. 637, 648 (1971); *In re Price*, 48 B.R. 211, 213 (Bankr. S.D. Fla. 1985); *Matter of Holwerda*, 29 B.R. 486, 489 (Bankr. M.D. Fla. 1983). "[T]he fundamental importance of discharge and [a] fresh start in the bankruptcy process dictates that exceptions to dischargeability be strictly and narrowly construed." *In re Cox*, 150 B.R. 807, 809 (Bankr. N.D. Fla. 1992), *citing In re Hunter*, 780 F.2d 1577, 1579 (11th Cir. 1986). The party objecting to the debtor's discharge has the burden of establishing that the debtor is not entitled to her discharge by the preponderance of the evidence. *Grogan vs. Garner*, 498 U.S. 279 (1991) (§ 523 action); *In re Chalik*, 748 F.2d 616 (11th Cir. 1984) (burden on objecting party); *In re Metz*, 150 B.R. 821 (Bankr. M.D. Fla. 1993) (standard of proof is

6

preponderance of the evidence) *In re Gollomp*, 198 B.R. 433 (S.D.N.Y. 1996) (§ 727 action).[3]

## 11 U.S.C. § 727(a)(4) – false oaths

Pinnacle alleged in its Complaint that the Debtor's discharge should be denied because he has made a false oath. Section 727(a)(4) provides:

> (a)   The court shall grant the debtor a discharge, unless–
>   (4)   the debtor knowingly and fraudulently, in or in connection with the case–
>     (A)   made a false oath or account;

The purpose of § 727(a)(4)(A) is to ensure that debtors disclose adequate information regarding their assets and financial affairs. *In re Zwirn*, 2005 WL 1978510, at *5 (Bankr. S.D. Fla. 2005). To prevail under § 727(a)(4)(A), the Creditor must prove that (1) the debtor made a statement under oath; (2) that the statement was false; (3) that the debtor knew the statement was false; (4) that the debtor made the statement with the intent to deceive; and (5) that the statement related materially to the bankruptcy case. *Id.* at *5. *See, also, In Re McGovern*, 215 B.R. 304, 306 (Bankr. D. Conn. 1997).

The purpose of § 727(a)(4) is to ensure that adequate information is available to those interested in administration of the estate without need of examinations or investigations to determine whether the information is true in the bankruptcy petition. *See In re Kaiser*, 94 B.R. 779 (Bankr. S.D. Fla. 1988).

---

[3] To effectuate the fresh start policy, objections to discharge are strictly construed against an objecting creditor and liberally in favor of the debtor. *Kiester v. Handy (In re Handy)*, 164 B.R. 355 (Bankr.M.D.Fla.1994); *Sperling v. Hoflund (In re Hoflund)*, 163 B.R. 879 (Bankr.N.D.Fla.1993).

Section 727(a)(4)(A) provides that the Debtor is to be denied his discharge where it is shown that "the [D]ebtor knowingly and fraudulently, in or in connection with the case [...] made a false oath or account. *See* 11 U.S.C. Section 727(a)(4).

In order to bar discharge, the false oath must be both "fraudulent" and "material".[4] *See, e.g., Swicegood vs. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991); *Chalik, supra*. A false oath is "material", and sufficient to bar a Debtor's discharge where it is shown that the oath bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of property. *Id* at 618; *In re Gonzalez*, 92 B.R. 960 (Bankr. S.D. Fla. 1988). Furthermore, the objecting party must also establish the necessary intent to show that the Debtor made the false oaths knowingly and fraudulently. *See Chalik, supra; In re Raiford*, 695 F.2d 521, 522 (11th Cir. 1983); *Wines vs. Wines*, 997 F.2d 852, 856 (11th Cir. 1993) (plaintiff must demonstrate "actual" not constructive fraud).

Additionally, a discharge must not be denied when the untruth was inadvertent or the result of a mistake. *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).

Pinnacle's allegations regarding false oaths were never established by any testimony or evidence. Most of the items complained of were in any event immaterial. Pinnacle fired a shotgun loaded with puny pellets aimed in the Debtor's general direction in an attempt to deny the Debtor his discharge under § 727(a)(4). The vast majority of those pellets missed. The few that hit did no harm. No material omissions exist; the

---

[4] Demonstrating that the misstatement was material is not enough to deny a discharge in and of itself; the misstatement or omission must be made with the requisite fraudulent intent, and the size of the error may bear on whether the intent exists. *See, In re Parnes*, 200 B.R. 710, 714 (Bankr. N.D. Ga. 1996).

8

omissions which exist were due to inadvertence, mistake or ignorance, and provide no grounds for denial of the Debtor's discharge. *See, e.g., North Community Bank vs. Boumenot*, 106 B.R. 149, 152-53 (N.D. Ill. 1989). Because Pinnacle has failed to carry its burden, the Debtor will not be denied his discharge under § 727(a)(4).

### 11 U.S.C. § 727(a)(5) – failure to explain loss of assets

Pinnacle seeks to deny Debtor's discharge for his alleged failure to explain his loss of assets. However, Pinnacle failed to identify any assets which have disappeared or whose loss the Debtor has failed to explain. The Debtor's business had gross revenues which substantially diminished in the years prior to his bankruptcy filing. He has lived in a modest two bedroom apartment for more than a decade. His BMW went off lease before the filing and was returned. Pinnacle has pointed to no asset which has disappeared. As Gertrude Stein said of Oakland, there is no there there. Gertrude Stein, Everybody's Autobiography (Reprint ed., Exact Change 2004) (1937)

Section 727(a)(5) mandates that "it is the Plaintiff's burden to establish that the Debtor had [an] interest in a property of some substance not to [sic] far removed from the date of the commencement of the case and on the date of the commencement of the case, he no longer had that property and when the Debtor was called upon to explain the non-existence of the property, he was unable to furnish a satisfactory explanation." *Insurance Co. of North America v. White (In re White)*, 177 B.R. 110, 115 (Bankr.M.D.Fla.1994);[5]

---

[5] Under Section 727(a)(5), Pinnacle bore the burden of identifying the assets in question and showing that the Debtor at one time had the assets and that the assets are not presently available for creditors. *See*, Rule 4005, Rules of Bankruptcy Procedure; *In re Sklarin,* 69 B.R. 949, 952 (Bankr.S.D.Fla.1987).

*In re Hawley*, 51 F.3d 246, 249 (11th Cir. 1995).  Pinnacle failed to carry this burden. The Debtor's discharge will not be denied under § 727(a)(5).

### 11 U.S.C. § 727(a)(3) – failure to maintain books and records

Pinnacle did not establish that the Debtor failed to maintain books and records. The Debtor's records were kept in what was essentially single-entry bookkeeping, and mostly through his on-line bank accounts.  He was not required to keep more complicated records.  He has moreover produced documents which include tax returns and bank records, and produced at trial significant documentation evidencing his and his business interests' financial history and transactions.  The Debtor's level of record keeping was consistent with his limited sophistication and may in turn help explain the failure of the businesses he operated over the years, but complex accounting is not required by the law.  All that is required of a debtor is that his financial condition and transactions may be discerned for a reasonable period of time in the past, *In re Bendetti*, 131 F.Appx. 224, 225 (11th Cir. 2005), and courts have full discretion to excuse the failure to keep or preserve records when presented with justifiable circumstances, *Id*.

The principal concern of § 727(a)(3) is debtors who destroy or hide their records. Moreover, most bankruptcies are consumer-type bankruptcies with no assets or business affairs to speak of, and, therefore, the complexity of their business transactions do not implicate § 727(a)(3). *In re Scott*, 172 F.3d 959, 970 (7th Cir. 1999).  Pinnacle presented no evidence to suggest that the Debtor destroyed or secreted any records.  Pinnacle has thus failed to meet its burden under § 727(a)(3), and the Debtor will not be denied his discharge on that ground.

Since Pinnacle has failed to establish any basis for the denial of the Debtor's discharge, it is ORDERED that the Debtor is entitled to a discharge under 11 U.S.C. §

727(a). A separate final judgment in conformity with these Findings of Fact and Conclusions of Law will be entered.

###

Copies to:

James B. Miller, Esq.
Debtor's Counsel
19 West Flagler Street, Suite 416
Miami, FL 33130

Mariaelena Gayo-Guitian, Esq.
ADORNO & YOSS
Creditor's Counsel
350 East Las Olas Blvd., #1700
Ft. Lauderdale, FL 33301

Michael Bakst, Esq.
Trustee's Counsel
222 Lakeview Avenue, #160
West Palm Beach, FL 33401

Soneet Kapila, Trustee
1000 S. Federal Hwy, Suite 200
Ft. Lauderdale. FL 33401

Office of the United States Trustee
51 SW 1st Avenue
#1204
Miami, FL 33130

I:\ORDERS\06-1480 Pinacle-Offer.ff&cl.2007.05.23.wpd